CASE 29.—ACTION BY SPENCER MELTON AGAINST THE LOUISVILLE & NASHVILLE R. R. CO. FOR DAMAGES FOR PERSONAL INJURIES.—November 19.

## Louisville & Nashville R. R. Co· v. Melton

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiff, defendant appeals— Affirmed.

1. Constitutional Law—Equal Protection of Laws.—Act Ind., March 4, 1893 (Laws 1893, p. 294, ch. 130), section 1, imposing on every railroad or other corporation, except municipal corporations, a liability for injury to an employe, where the injury is sustained as therein prescribed, applies to all persons, whether natural or artificial, operating a railroad, and is not subject, as to the operation of railroads, to the constitutional objection that it imposes on corporations burdens not imposed on individuals.

2. Same.—The act is not unconstitutional, as to a carpenter in the employ of a railroad, on the ground that the State may not establish a rule for carpenters in railroad service and

another rule for carpenters not in such service.

3. Courts—Jurisdiction—Actions Under Laws of Other States—Comity Between Courts.—A cause of action accruing to a railroad employe under Act Ind., March 4, 1893 (Laws 1893, p. 294, ch. 130), section 1, imposing on every railroad or other corporation, except municipal, operating in that State, a liability for injury to an employe, where the injury was sustained as therein prescribed, will be enforced in Kentucky, even though the courts of Indiana would not enforce, as they doubtless would, a cause of action accruing in Kentucky.

4. Master and Servant—Action for Injuries to Employe—Question for Jury.—In an action by a carpenter for injuries due to the breaking of a chain holding a pully used in raising a bent, whether a reasonably safe appliance was furnished held for the jury.

5. Same—Instructions.—In an action by a carpenter for injuries due to the breaking of a chain holding a pulley used in raising a bent, under Act Ind. March 4, 1893 (Laws 1893, p. 299, ch. 130), section 1, imposing a liability on railroad corporations for injury to employes, where the injury is due to any defect in appliances furnished resulting from the negligence of the corporation or some person intrusted with the duty of keeping such appliances in proper condition, or where the injury results from the negligence of any person to whose order the injured employe is bound to conform, instructions that if plaintiff's injury was due to any defect in the appliances furnished, and such defect was the result of negligence by defendant's foreman of the crew with which plaintiff was working, and who was a person intrusted by defendant with the duty of keeping appliances in proper condition, and plaintiff was in the exercise of due care, he was entitled to recover; that if the injury resulted from the negligent orders of the foreman, and plaintiff was bound to conform to such foremans orders, and was exercising due care, he was entitled to recover; and that plaintiff was not entitled to recover because an appliance was not reasonably safe, if such condition was unknown to the foreman and would not have been discovered by him by the exercise of ordinary care—were in accord with the statute.

6. Damages—Excessive Amount—Personal Injuries.—Plaintiff, a carpenter, was injured by the falling of a bent which he was assisting to raise. At the time of the injury he was a healthy young man weighing 145 pounds, but at the trial weighed but 116 pounds. One leg was fractured at the knee, the other at the hip, and his ribs on one side were broken, and also

his back. He was · paralyzed ·from his waist down. His
bowels and bladder had to be moved with an instrument,
and his virility was destroyed. His suffering· for six or eight
weeks was very intense, and after that he ~vas never free
from pain. At the time of the ·injury he was capable of
earning $3 a day. Held, That a verdict for $22,000 was not
excessive.

Note by Reporter.—This case has been appealed to the United
States Supreme Court.

WADDELL & DEMPSEY and BENJAMIN D. WARFIELD for
appellant.

### POINTS DISCUSSED AND AUTHORITIES CITED.

1. The Indiana statute can not be constitutionally applied to the
facts of this case; nor is appellee entitled to recover under the
common law of Indiana. (P., C., C. & St. L. R. Co. v. Montgom-
ery, 152 Ind. 1, 69 L. R. A. 875; Tullis v. L. E. & W. R. Co., 175
U. S., 348; G. C. & S. F. R. Co. v. Ellis, 165 U. S., 150; Southern
Indiana Ry. v. Harrell, 68 N. E., 262; I. & G. R. T. Co. v. Foreman,
69 N. E., 669; Ballard v. Miss. Cotton Oil Co., 81 Miss. 507, 62
L. R. A. 407; Johnson v. St. Paul & Duluth R. Co., 8 L. R. A.,
419; Jemming v. G. N. R. Co., 104 N. W., 1079; · Dana & Co. v.
Blackburn, 28 Ky. Law Rep., 695; Deppe v. Chica,o etc., R. Co., 36
Iowa, 52-55; R. Co. v. Pontius, 52 Kas. 264,, affirmed 157 U. S.
212; 4 Thompson on Negligence, sections 5311, 5294 5295, 5296,
5299; 2 Labatt Master & Servont, section 646 and notes; Foley
v. Chicago, etc., R. Co., 64 Iowa 644, 21 N. W. 124; Strogle v.
Chicago, etc., R. Co., 70 Lowa, 555; Luce v. Same, 67 Iowa, 75;
Redington v. C., M. & St. P. R. Co., 78 N. W., 800; R. Co. v. Me-
daris, 60 Kas. 151, 55 Pac. 875; Holtz v. G. N. R. Co., 69 Minn., 524;
Kreutzer v. Id., 83 Minn. 385, 86 N. W. 413; Cotting v. K. C. Stock
Yards Co., etc., 183 U. S., 79, 108-9; Connolly v. Union Sewer Pipe
Co., 184 U. S., 540-560; C. & C. Bridge Co. v. Kentucky, 154 U. S.,
204; The Bedford Quarries Co. v. Bough, decided by Supreme
Court of Indiana March 1, 1907; O'Neill v. R. Co. (Neb.), 60 L. R.
A., 443.)

2. The Indiana statute is not enforceable in a Kentucky forum.
(13 Am. & Eng. Ency. of Law, 1051, 1054; Wintuska's Admr. v.
L. & N. R. Co., 14 Ky. Law Rep., 579; Bruce's· Admr. v. Cincin-
nati R. Co., 83 Ky., 174; Taylor's Admr. v. Pa. R. Co., 78 Ky., 348;
Story on Conflict of Laws, Ed. 1872, section 23; Minor Conflict of
Laws, section 6; Vawter's Admr. v. N. P. R. Co., 19 A. & E. R.

Louisville & Nashville R. R. Co. v. Melton.

Cases, 176; St. L., I. M. & S. R. Co. v. McCormick. 1 L. R. A., ъ04; Railroad Co. v. Reed, 62 N. E., 488; Wabash R. R. Co. v. Fox, Admr., 64 Ohio St. 133, 59 N. E. 888; B. & O. R. Co. v. Chambers, 73 Ohio St. 16, 76 N. E., 91.)

3. Appellant .was entitled to a judgment on the pleadings. (Malott v. Semple, 74 N. E., 245; R. Co. v. Harrell, 68 N. E., 262; R. Co. v. Foreman, 69 N. E., 669; Coal Co. v. Peterson, 43 Am. St. Rep., 327; R. Co. v. Jones, 130 Ala., 456; Wheatley v. Coal Co., 122 Ala., 118; R. Co. v. Moore, 128 Ala., 434; R. Co. v. Petrit, 27 Ind. App., 120; Thacker v. R. Co., 159 Ind., 82; R. Co. v. Montgomery, 152 Ind., 1; I. R. Co. v. Shumack, 23 Ind. App., 87; Hodges v. Wheel Co., 152 Ind., 680; R. C. v. Wagner, 153 Ind., 420; R. Co. v. Foreman, 69. N. E., 669; R. Co. v. Johnson, 102 Ind., 352; R. Co. v. Brooks, 84 Ala., 138; R. Co. v. George, 94 Ala., 218; Reno, Employers' Liability, 152, 162; Dresser, Ib. 295-310; Labatt, Ib. sections 690, 695; Canal Co. v. Murphy, 9 Bush, 522; R. Co. v. Case, 9 Bush, 728; Bliss Code Pleading, 3d Ed., section 210 (a).)

4. There was no actionable negligence proven against appellant. (Labatt, sections 5885-592, 615-616; 12 Am. & Eng. Eucy., 593; R. Co. v. Harrell, supra; R. Co. v. Thacker, supra; Bedford Belt Co. v. Brown, 142 Ind. 659, 42 N. E. 359; Gauges v. R. Co., 69 N. E., 1063; Galow v. R. Co., 131 Fed., 232; Leishman v. Iron Co., 83 Pac., 30; Watts v. Beard, 45 N. Y. Supp., 873; Lindvall v. Woods, 41 Minn., 212; Beasley v. Co., 103 Mich., 196; Killen v. Faxon, 125 Mass., 485; Bridge Co. v. Castleberry, 131 Fed., 175; Bradshaw v. R. Co., 14 Ky. Law Rep., 688; Stuart v. R. Co., 15 Ind., 184; Nall v. R. Co., 129 Ind., 268; L. & N. R. Co. v. Campbell, 12 Sou., 574; Sou. Ry. Co. v. Moore, 29 Sou., 659; Wilson v. L. & N. R. Co., 4 Sou., 701; Colfax C. & M. Co. v. Johnson, 52 Ill. App., 383; Doyle v. White, 14 Misc. Rep. 417, 35 N. Y. Supp. 760; Morris v. Walworth, 63 N. E., 910; Jones v. Burford (1884), 1 Times L. R., 137.)

5. The instructions were erroneous and prejudicial. (Stone Co. v. Steel, 32 Ind. App., 52; R. Co. v. Pettit, 27 Ind. App., 124; Henderson City R. Co. v. Lockett, 98 S. W., 303; Perigo v. I. B. Co., 21 Ind. App., 338; Bedford Belt Ry. Co. v. Brown, 142 Ind. 659; R. Co. v. Harrell, 63 L. R. A., 461; R. Co. v. Thacker, 59 L. R. A., 792; R. Co. v. Foreman, 69 N. E., 669; Rounds v. Carter, 94 Me., 535; Gauges v. R. Co., 69 N. E., 1063; Galow v. Co., 131 Fed., 242; Lishman v. Iron Co., 83 Pac., 30; Watts v. Beard, 45 N. Y. Supp., 873; Lindvall v. Woods, 41 Minn., 212; Kennedy v. Spring, 35 N. E., 779; Harnois v. Cutting, 54 N. E., 842; Ling v. R. Co., 52 N. W., 378; Bell v. Lang, 86 N. W., 95; Mayer v. Thropp, 35 Atl., 1057; Kinner v. Webber, 151 N. Y., 417; Ludlow v. Bridge Co., 76 N. Y., 343; Beesley v. Co., 103 Mich., 196; Ross v. Walker,

23 Am. St. Rep., 160; Killea v. Faxon, 125 Mass., 485; Bridge Co. v. Castleberry, 131 Fed., 175; Labatt, p. 1981; 12 Am. & Eng. Ency., 953; Tullis v. R. Co., 175 N. S., 348; Labatt, section 649; Whitcomb v. Co., 153 Ind., 513.)

6. The court erred in admitting incompetent evidence against appellant. (L. & N. R. Co. v. Molloy's Admr., 28 Ky. Law Rep., 1113-1119.)

7. The verdict, which was limited by the instructions to compensatory damages, is very excessive, and could only have been returned by a jury actuated by passion, malice or prejudice. (L. & N. R. Co. v. McEwan, 17 Ky. Law Rep. 406, 31 S. W. 465; L. & N. R. Co. v. Creighton, 106 Ky., 42; S. C. & C. St. Ry. Co. v. Ware, 84 Ky., 267; Louisville Southern R. Co. v. Minogue, 90 Ky., 369; L. & N. R. Co. v. Long, 94 Ky., 410; C. & C. Bridge Co. v. Goodnight, 22 Ky. Law Rep., 1242; Standard Oil Co. v. Tierney, 92 Ky. 367, 96 Ky. 89; L. & N. R. Co. v. Lowe, 118 Ky., 260; L. & N. R. Co. v. Kingman, 18 Ky. Law Rep., 82; Board of Internal Improvement v. Moore, 23 Ky. Law Rep., 1885; I. C. R. Co. v. Watson, 25 Ky. Law Rep., 1360; I. C. R. Co. v. Houchins, 28 Ky. Law Rep., 499; L. & N. R. Co. v. Fox, 11 Bush, 495; Chicago, etc., R. Co. v. Jackson, 55 Ill., 497.)

GORDON & GORDON & COX and CLAY & CLAY for appellee.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. Actions on account of personal injuries are transitory. A resident of this State may maintain an action here for an injury inflicted in Indiana, but the right to recover is governed and controlled by the laws of Indiana. (Bruce's Admr. v. Cincinnati R. Co., 83 Ky., 174 (overruling Taylor's Admr. v. Pennsylvania Co., 78 Ky., 348); Louisville & N. R. Co. v. Whitlow's Admr., 43 S. W., 711; Ill. Cent. R. Co. v. Jordan, 78 S. W., 426; Chicago & E. I. R. Co. v. Rouse, 52 N. E., 951; B. & O. S. W. R. Co. v. Reed, 158 Ind., 25, 62 N. E. 488.)

2. The employers' liability statute of Indiana, as construed by the supreme court of that State, and as applied to the facts of this case, is not repugnant to the Fourteenth Amendment of the United States Constitution, but is a valid exercise of legislative power (Pittsburg, etc., R. Co. v. Montgomery, 152 Ind. 1, 49 N. E. 582; Same v. Same, 43 L. Ed. (U. S.), 1188; Tullis v. Lake Erie, etc., R. Co., 175 U. S. 348, 44 L. Ed. 192; Indianapolis Union ? ·. Co. v. Houlihan, 60 N. E. 943, 54 L. R. A. 787; Pittsburg, etc., R. Co. v. Lighteiser, 78 N. E., 1033; Bedford Quarries Co. v. Bough, 80 N. E., 529; Pittsburg, etc., R. Co. v. Collins, 80 N. E., 415;

Louisville & Nashville R. R. Co. v. Melton.

Same v. Same, 80 N. E., 845; Indianapolis St. Ry. Co. v. Kane, 80 N. E., 841; Schoolcraft's Admr. v L. & N. R. Co., 92 Ky, 233; Chicago R. I. P. R. Co. v. Stahley, 62 Fed., 363; Kansas, etc., R. Co. v. Pontius, 157 U. S. 209, 39 L. Ed. 675; Callahan v. St. Louis M. B. T. Ry. Co., 170 Mo. 473, 71 S. W. 208; St. Louis M. B. T. Ry. Co. v. Callahan, 194 U. S. 628, 48 L. Ed. 1157; Railroad Co. v. Ivey, 73 Ga., 504; Pierce v. Van Dusen, 78 Fed., 693; Kane v. E. ie Ry. Co., 133 Fed., 681; Missouri P. Ry. v. Mackey, 127 U. S. 205, 32 L. Ed. 107; Missouri P. Ry. Co. v. Humes, 115 U. S. 512, 29 L. Ed. 467; Minneapolis, etc., R. Co. v. Herrick, 127 U. S. 210, 32 L. Ed. 585; Minnesota Iron Co. v. Kline, 199 U. S. 593, 50 L. Ed. 322; Minneapolis, etc., R. Co. v. Beckwith, 129 U. S. 26, 32 L. Ed. 585; W. W. Cargill & Co. v. Minnesota, ex rel. R. & W. Commission, 180 U. S. 452, 45 L. Ed. 619; Minneapolis, etc., R. Co. v. Emmons, 149 U. S. 364, 37 L. Ed. 771.)

3. Independent of the Indiana statute, the plaintiff is entitled to recover under the common law as administered in Indiana. (Ky. Code, section 83; 12 Am. & Eng. Ency. of Law, 948 and 950; Indiana, etc., R. Co. v. Snyder, 140 Ind. 647, 39 N. F. 912; Brazil Black Coal Co. v. Young, 117 Ind. 520, 20 N. E. 423; Kruger v. Louisville, etc., Ry. Co., 111 Ind. 51, 11 N. E. 957; Southern Ind. R. Co. v. Harrell, 68 N. E., 262.)

4. A cause of action is stated in the pleadings, both under the statute and at common law. (Goleneck v. Dean Steam Pump Co., 43 N. E., 85; Indiana, etc., Coal Co. v. Buffey, 62 N. E., 279; Chiles v. Drake, 11 Mct., 149.

5. There was no prejudicial error committed by the lower court in the admission or rejection of evidence. (12 Am. & Eng. Ency. of Law, 422 and 424; Ford v. Providence Coal Co., 99 S. W., 609; Louisville Belting & Iron Co. v. Hart, 92 S. W., 951; Claxton's Admr. v. Lexington, etc., Ry. Co., 13 Bush, 636.)

6. The verdict is sustained by the evidence. (Terre Haute, etc., Ry. Co. v. Rittenhouse, 62 N. E., 297; Indianapolis St. Ry. Co. v. Kane, 80 N. E., 843; Louisville, etc., Ry. Co. v. Wagner, 53 N. E., 927; Covington & Cincinnati Bridge Co. v. Goodnight, 6 0S. W., 415.)

7. The instructions confined plaintiff's right of recovery to the Indiana statute. If error was committed it was to the prejudice of plaintiff and not the defendant. If the second sub-division of the statute is construed to apply to special orders only, the failure to use the word "special" in the instructions was harmless, as there was no evidence introduced as to any but special orders having been given by the foreman. (Indianapolis St. Ry. Co. v. Kane, 80 N. E., 843; Reeves v. French, 45 S. W., 771; Nelson v. Terry, 56 S. W., 672; Louisville Ry. Co. v. Willis, 66 S. W., 628;

Louisville, etc., Mail Co. v. Barnes, 79 S. W., 261; L. & N. R. Co. v. Logsden, 24 Ky. Law Rep., 1566; Louisville, etc., Ry. Co. v. Wagner, 53 N. E., 927.)

8. The verdict is not excessive. The plaintiff is a physical wreck, his power to labor totally destroyed, his pain and suffering, both mental and physical, is great, and the amount awarded is no more than he was entitled to under the evidence. It certainly does not indicate passion, prejudice, or ill will on the part of the jury. (Texas, etc., R. Co. v. Kelly, 80 S. W., 1072; Galveston, etc., Ry. Co. v. Nass, 57 S. W., 910; Lake Shore, etc., R. Co. v. Topliff, 18 Ohio Cir. Ct. R., 709; Fonda v. St. Paul City Ry. Co., 79 N. W., 1043; Pittsburg, etc., R. Co. v. Simons, 79 N. E., 911; Scullin v. Wabash R. Co., 83 S. W., 760; Alberti v. New York, etc., Ry. Co., 23 N. E., 35; Same v. Same, 43 Hun., 421; Retan v. Lake Shore, etc., R. Co., 94 Mich. 146, 53 N. W. 1094; Smith v. Whittier, 30 Pac., 529.)

Additional authorities by JAS. W. CLAY for appellee.

## QUESTIONS DISCUSSED AND AUTHORITIES CITED.

Constitutionality of Indiana Employers' Liability Statute as applied to an employe of a railroad company, injured while engaged in erecting or repairing a coal chute or coal tipple for a railroad company, to be used by it in coaling its engines. (MaGoun v. Bank, 170 U. S. 200, 42 L. Ed. 1042; Barbier v. Connolly, 113 U. S. 27, 28 L. Ed. 923; Railroad v. Mackey, 127 U. S. 205, 32 L. Ed. 107; Railroad v. Ellis, 165 U. S. 150, 41 L. Ed. 165; Callahan v. Railway Co., 170 Mo. 473, 71 S. W. 208; Railway Co. v. Callahan, 194 U. S. 628, 48 L. Ed. 1157; Edge v. Electric Ry. Co. (Mo.), 104 S. W., 90; Railroad Co. v. Ivey, 73 Ga., 504; Railroad Co. v. Miller, 9 0Ga., 571; Railroad Co. v. Hicks (Ga.), 22 S. E., 613; Campbell v. Cook, 80 Texas, 630; Railroad Co. v. Mohrmann (Texas), 93 S. W., 1090; Sherman v. Railroad Co. (Texas), 91 S. W., 561; Railroad Co. v. Carlin, 111 Fed. R., 777; Same v. Same, 189 U. S. 354, 47 L. Ed. 849; Hancock v. Railroad Co., 35 S. E. (N. C.), 679; Rutherford v. Railroad Co., 35 S. E. (N. C.), 136; Mott v. Railroad Co., 42 S. E. (N. C.), 601; Sigman v. Railroad Co., 47 S. E. (N. C.), 420; Nicholson v. Railroad Co., 51 S. E. (N. C.), 40; Railroad Co. v. Montgomery, 152 Ind. 1, 49 N. E. 582; Tullis v. Railroad Co., 175 U. S. 348, 44 L. Ed. 192; 1st Sup. Rev. St. U. S. pp. 901 and 903; Railroad v. Leighteiser, 78 N. E., 1033; Bedford Quarries Co. v. Bough, 80 N. E., 529; Street Railway v. Kane, 80 N. E., 841; Minnesota Iron Co. v. Kane, 199 U. S., 593.)

OPINION OF THE COURT BY JUDGE HOBSON—
Affirming.

Spencer Melton was a carpenter in the service of
the Louisville & Nashville Railroad Company, and on
March 2, 1905, was engaged in building a coal chute
on the railroad tracks near Howell, Ind., working
under a foreman named Shrode. In building the coal
chute it became necessary to set up some bents, weigh-
ing about 1,200 pounds each, and 22 feet long. To
raise up the bents they used a pulley, block, and
tackle. The bent was raised by the hands pulling on
the rope. The pulley was fastened to a square beam
by an iron chain similar to those used for locking a
wagon. The bent was too heavy for the men to carry
it up at once. They would surge upon the rope, and
thus lift it a little, and then, after catching their
breath, would surge again. To prevent the bent from
going back when thus lifted up, Melton, by the direc-
tion of the foreman, got a piece of timber and prop-
ped the bent, to hold it at the height to which it had
been raised when the men made a surge. The fore-
man had a similar piece of timber and propped the
bent on the opposite side from Melton. While they
were thus engaged in raising the bent, the chain
which held the pulley broke, the bent fell, catching
Melton under it, and smashing him down upon other
timbers, fracturing one leg at the knee, the other at
the hip, breaking the ribs on one side, and also break-
ing his back. By reason of his injuries he was paral-
ized from his waist down. The bowels and bladder
have to be moved with an instrument. His virility is
destroyed. He has no feeling in the right leg, or use
of it, and the left is but little better. He was then

a healthy young man, weighing 145 pounds. Now he weighs 116 pounds. His suffering for six or eight weeks was very intense, and since then while he has not suffered so much, he is never free from pain. The pain in his back is continuous. He was treated in sanitariums at Chicago, St. Louis, and Evansville, as well as by local doctors at his home. The testimony of the physicians show that his injuries are permanent. In this suit brought by him to recover for his injuries, the jury found for him and fixed his damages at $22,000. The court entered judgment upon the verdict, and the railroad company appeals.

The action was brought under a statute of Indiana, which, so far as material, is as follows:

"An act regulating liability of railroads and other corporations, except municipal, for personal injury to persons employed by them, fixing the rules of evidence which shall govern in such cases, and providing that the decisions or statutes of other states shall not be pleaded or proven as a defense in this state; provided further, that its provisions shall not apply to any injuries sustained before it takes effect, nor in any manner any suits or legal proceedings pending at the time it takes effect, and declaring an emergency.

"Approved March 4, 1893.

Section 1. Be it enacted by the General Assembly of the state of Indiana, that every railroad or other corporation except municipal operating in this state, shall be liable in damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases:

"First: When such injury is suffered by reason of any defect in the condition of ways, works, plants,

tools and machinery connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation, or some person entrusted by it with the duty of keeping such way, works, plant, tools or machinery in proper condition.

"Second: Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform and did conform.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sec. 4. In case any railroad corporation which owns or operates a line extending into or through the state of Indiana and into or through another or other states, and a person in the employ of such corporation, a citizen of this state, shall be injured as provided in this act, in any other state where sucn railroad is owned or operated, and a suit for such injury shall be brought in any of the courts of this state, it shall not be competent for such corporation to plead or prove the decisions or statutes of the state where such persons shall have been injured as a defense to the action brought in this state."

Laws 1893, p. 294, c. 130.

It is insisted for the railroad company that the act is unconstitutional in this: that it applies to corporations and does not apply to individuals whose employes may be injured. The Supreme Court of Indiana has construed the statute only to apply to railroad companies. It is held that it applies to all persons, whether natural or artificial, operating a railroad, and that it does not apply to any other business. The United States Supreme Court has affirmed the constitutionality of the statute, basing

its judgment upon the construction of the statute given by the Supreme Court of Indiana. Railroad Co. v. Montgomery, 152 Ind. 1, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. Rep. 301; Tullis v. Railroad Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; Railroad Co. v. Lightheiser (Ind.) 78 N. E. 1033; Indianapolis, etc., R. R. v. Houlihan, 157 Ind. 494, 60 N. E. 943, 54 L. R. A. 787; Bedford Quarries Co. v. Bough (Ind.) 80 N. E. 529.

It is earnestly insisted that, while the act is constitutional under these rulings as to those operating a railroad, it cannot be held constitutional as to a carpenter; that the State may not establish a rule for carpenters in the service of a railroad, and another rule for carpenters in the service of other people. We are unable to see the force of this distinction. A railroad cannot be run without bridges. Bridges cannot be build without carpenters. The work of a bridge carpenter on a railroad is perhaps no less perilous than the work of an operative on one of its trains. Coal tipples are no less essential to the operating of a railroad than bridges, because the engines cannot be operated without coal. The construction of a coal tipple is therefore essential to the operating of a railroad. As has been well said, the Legislature cannot well provide for all subjects in one act. Legislation must necessarily be done in detail, and an act regulating railroads violates no constitutional provision because it is made to apply only to railroads. Indianapols, etc., R. R. Co. v. Kane (Ind.) 80 N. E. 841; Schoolcrafts Adm'r v. L. & N. R. R. Co., 92 Ky. 233, 13 Ky. Law Rep. 517, 17 S. W. 567, 14 L. R. A. 579; Chicago, etc., R. R. Co. v. Stahley, 62 Fed. 363, 11 C. C. A. 88; Callahan v. Railroad Co., 170 Mo. 473, 71 S. W.

208, 60 L. R. A. 249, 94 Am. St. Rep. 746; Railroad
Co. v. Callahon, 194 U. S. 628, 24 Sup. Ct. 857, 48
L. Ed. 1157; Railroad Co. v. Ivey, 73 Ga. 504.

The defendant also insisted that the act cannot be
enforced in this State, because it provides that the
decisions and statutes of other states shall not be
read or considered in the courts of Indiana. It is
said that the statutes of Indiana are only considered
in this State by comity, and that it will not be en-
forced in this State when the courts of Indiana
do not treat the Kentucky statutes and decisions
with like comity. The section in question has been
held unconstitutional by the courts of Indiana.
Baltimore & Ohio S. W. R. Co. v. Reed, 158 Ind.
25, 62 N. E. 488, 56 L. R. A. 468, 92 Am. St. Rep.
293. But, aside from this, when the plaintiff was
injured at Howell, Ind., a cause of action accrued
to him; and this cause of action which there accrued
to him he is seeking to enforce by this action. The
rights of the parties must depend on the facts as
they then existed. The cause of action which Melton
then had the courts of Kentucky will enforce. We
have no doubt the courts of Indiana do the same as
to a cause of action accruing here. But, if they did
not, the fact that they did not administer justice
would be no reason why this court should deny jus-
tice to a litigant here. No reason of public policy
exists why the courts of this State should be closed
to a citizen of this State seeking to enforce a meritori-
ous cause of action.

The proof on the trial on behalf of the plaintiff
showed that the chain was not the proper one for the
work in which it was used, that it was supplied by
the foreman, and that he had ordered the men to use
it. The proof also showed that the chain was a de-

fective one of its kind, and that this might have been discovered by an ordinary examination of it. The broken link has been brought to this court with the record, and an examination of it indicates that the iron was not properly welded when the link was made. The plaintiff also showed that a chain of long links like this, when put around a square sill, is much more liable to pull in two at the corners of the sill, where the strain would tend to pull the link open, than it would be if the chain was stretched straight and a direct strain put upon it. The only expert who testified on the trial stated that the chain had a strength of 6,000 pounds; that the rule was that a chain would have a strength 6 times as great if the strain was steady and 16 times as great if it came by jerks. The weight of the bent here was greater than one-sixth of the strength of the chain, and in lifting the bent they put much more strain upon the chain than the weight of the bent, because, the rope being at an acute angle to the bent, a large part of the power went against the ground at the foot of the bent. In addition to this, the strain being by jerks, a much stronger chain was required, especially at the corners of the sill the strain would be great. It is apparent, from an examination of the link brought here, that the link pulled open. There was therefore proof that the master did not furnish the servant a reasonably safe appliance, and that by reason of the insufficiency of the appliance, the servant received the injuries sued for. The court properly refused to instruct the jury peremptorily to find for the defendant, and submitted the question of negligence to the jury.

The court, among other things, instructed the jury as follows: "(1) The court instructs the jury that

if they believe from the evidence that the injury received by plaintiff, if any, was suffered by reason of any defect in the condition of works or tools connected with or in use in the business of the defendant, and that such defect, if any, was the result of negligence on the part of the defendant's foreman of a construction crew with which plaintiff was working, and who was a person intrusted by the defendant with the duty of keeping such tools or works in a proper condition, and that plaintiff was at the time he received such injury in the service of the defendant, and was at the time in the exercise of due care and diligence, then the law is for the plaintiff, and the jury shall so find.  (2) If the jury shall believe from the evidence that the injury to plaintiff, if any, resulted from the negligent orders, if any, of the foreman of the construction crew with which plaintiff was working, such foreman being then in the service of the defendant, and that plaintiff at the time was bound to conform and did conform to the orders or directions of such foreman, and the plaintiff himself was at the time an employe of the defendant, in its service, and was himself at the time in the exercise of due care and diligence, then the law is for the plaintiff, and the jury will so find.  *  *  *  (5) The court instructs the jury that they cannot in any event find for plaintiff, because they may believe from the evidence that the chain with which the hitch was made was not reasonably safe, if they shall believe from the evidence such condition was unknown to defendant's foreman, W. C. Shrode, and would not have been discovered by him by the exercise of ordinary care in time to have prevented the injury."

These instructions are in accord with the statute.

The foreman ordered the men to use the chain. He ordered them to lift the bent with the block and tackle. He ordered Melton to get a piece of timber and prop the bent, and when Melton was obeying his order, in his presence and under his personal supervision, the bent fell, by reason of the breaking of the chain, and injured him. We cannot see how the jury could have been misled in any way by the instructions. The real question in the case was whether the chain was defective, or an improper appliance; and the court by the fifth instruction told the jury that they could not in any event find for the plaintiff, on the ground that the chain was not reasonably safe, if Shrode did not know its condition and could not have discovered it by ordinary care. The instructions asked by the defendant, so far as they were proper, were embraced in those given by the court.

It is earnestly insisted that the verdict is palpably excessive and the result of passion and prejudice on the part of the jury. In a case like that before us, where a young and healthy man has been made a complete wreck, so that life must be to him a burden, a living death, a much larger verdict may be sustained than in a case where the person is killed. The plaintiff was capable of earning something like $3 a day. He was in the morning of life, and might reasonably expect to increase his earning capacity as he rose in his business. But, in view of his expectation of life, at what he had then been making, the verdict is not so excessive as to strike one at first blush as the result of passion and prejudice, when we consider the suffering that he endured and his helpless condition at the trial, when medical skill had done all that it could do for him. In other states a number of verdicts much larger have been sustained

Louisville & Nashville R. R. Co. v. Melton.

for injuries not so serious as those proved here. Texas, etc., R. Co. v. Kelly, 34 Tex. Civ. App. 21, 80 S. W. 1073; Fonda v. St. Paul City Ry. Co., 77 Minn. 336, 79 N. W. 1043; Pittsburgh, etc., Ry. Co. v. Simons, (Ind.) 79 N. E. 911; Scullin v. Wabash R. Co., 184 Mo. 695, 83 S. W. 760; Alberti v. New York, etc., R. Co., 118 N. Y. 77, 23 N. E. 35, 6 L. R. A 765; Retan v. Lake Shore, etc., Ry Co., 94 Mich. 146, 53 N. W. 1094; Smith v. Whittier, 95 Cal. 279, 30 Pac. 529; Phillips v. London R. R. Co., 42 L. T. R. 6.

There was no substantial error in the admission or rejection of evidence  The persons admitted as experts were qualified to testify as such. The weight of their evidence was for the jury. On the whole record, we see no error to the prejudice of defendant's substantial rights.

Judgment affirmed.

On Rehearing—

We are unable to see that the Indiana statute as construed in the opinion is in violation of the fourteenth amendment to the Constitution of the United States, or that any right guaranteed thereby is denied by the decision in this case. We endeavored to show this in the original opinion. We are also unable to see that the conclusion we reached is not in keepng with the construction of the statute by the Supreme Court of Indiana. Our conclusion is sustained by the following cases in other states' under similar statutes: Georgia, etc., R. R. Co. v. Miller, 90 Ga. 571, 16 S. E. 939; Railroad Co. v. Koehler, 37 Kan. 463, 15 Pac. 567; Georgia, etc., R. R. v. Hicks, 95 Ga. 301, 22 S. E. 613; Campbell v. Cook, 86 Tex. 630,

26 S. W. 486, 40 Am. St. Rep. 878; Galveston, etc.,
R. R. v. Mohrman (Tex. Civ. App.) 93 S. W. 1090;
Sherman v. Texas, etc., R. R. (Tex. Sup.) 91 S. W.
561; Hancock v. Norfolk, etc., R. R. (N. C.) 32 S.
E. 679; Rutherford v. Southern R. Co, 56 S. C. 446,
35 S. E. 136; Mott v. Southern R. R. Co., 131 N.
C. 234, 42 S. E. 601; Sigman v. Southern R. R. Co.,
135 N. C. 181, 47 S. E. 420; Nicholson v. Transyl-
vania R. R. Co., 138 N. C. 516, 51 S. E. 40; Texas
R. R. v. Carlin, 111 Fed. 777, 49 C. C. A. 605, 60 L.
R. A. 462; Id., 189 U. S. 354, 23 Sup. Ct. 585, 47
L. Ed. 849; Edge v. Railroad Co. (Mo.) 104 S. W.
90.

The petition is overruled.

DISSENTING OPINION BY JUDGE BARKER.

I find myself unable to concur in the opinion affirm-
ing the judgment in this case, and the duty I owe
myself, as well as that due the appellant, constrains
me, much against my natural inclination, to state the
reasons for dissenting from the conclusion reached
by a majority of my Brethren.

On March 2, 1905, a carpenter's force of the Louis-
ville & Nashville Railroad Company were construct-
ing coal chutes near, but not upon, the tracks or
roadway of the railroad company at the mines of the
Ingle Coal Company, at or near Howell, Ind. The
force consisted of seven laborers, including the fore-
man, one W. C. Shrode, and appellee, Melton. In
raising, with an ordinary pulley, block, and tackle, a
bent of timber weighing about 1,000 pounds from a
partly horizontal to an upright position, the bent
fell by reason of a latent defect in the welding of
one of the links of a chain with which one of the

pulley blocks was temporarily attached to the frame-work. In falling the bent fell upon Melton and produced a concussion of his spine, resulting in partial paralysis of his lower extremities. For this injury Melton brought his action against the railroad company in Hopkins circuit court, and elected to proceed under the statute of the State of Indiana commonly known as the "Employer's Liability Act." A trial of the action resulted in a verdict for compensatory damages in the sum of $22,000.

As Melton's cause of action is rested upon the Indiana statute regulating the liability of corporations for injuries received by their employes, the first question with which we are confronted is whether or not that act, as construed by the majority opinion, is constitutional, or whether, on the contrary, it is inimical to that provision in the fourteenth amendment of the federal Constitution, which guarantees to all the equal protection of the law, or, as has been said, the protection of equal laws. As the act in question is fully set out in the opinion of the court, it is not necessary to incorporate any part of it here. It is deemed sufficient to say that it prescribes a different rule of liability for those employers who may be brought within its purview from that imposed by the laws of Indiana upon other employers for injuries occuring to their employes, and unless it can be differentiated by a reasonable classification from those laws it must be held violative of the federal Constitution.

It is earnestly contended by counsel for appellant that the Indiana court of last resort has construed this act to be applicable only to those employers operating railroads, and, further, that it has limited its application to injuries occurring to employes

engaged in the hazard of the actual operation of the
railroad at the time they were hurt  Whether this
be so, or not, I shall not now investigate.  This court
has enforced the act as applying to injuries occurring
to all railroad employes, whether. they be at the time
engaged in the active .operation of the railroad as
such, or whether they are engaged in what may be
termed collateral occupations, among which may be
included all those occupations which are merely
auxiliary to the active operation of the railroad and
not subject to the extreme hazard which exists in the
active carrying forward of its operation.  This con-
clusion makes it necessary to inquire whether the
act, as construed, is or not inimical to the equality
clause of the federal Constitution.

As said before, it is not permissible, under the
federal Constitution, to impose arbitrarily upon one
class burdens which are not imposed upon the com-
munity in general; nor may a Legislature arbitrarily
impose a liability upon one class of employers which
is not imposed upon others.  Undoubtedly the State
may regulate the liability of employers to their
employes if the classification for regulation be based
upon just and reasonable principles; but it may not
arbitrarily select one class, whose liability is to be
ascertained by rules more stringent than apply to
employers generally doing a similar business.  This
principle has nowhere been more clearly and forcibly
expressed than by the Supreme Court of the United
States in G., C. & S. F. R. Co. v. Ellis, 165 U. S.
150, 17 Sup. Ct. 255, 41 L. Ed. 666, where the ques-
tion we have in hand is discussed.  In the opinion it
is said: "But it is said that it is not within the scope
of the fourteenth amendment to withhold from states
the power of classification, and that if the law deals

alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection. While, as a general proposition, this is undeniably true (citing many cases), yet it is equally true that such classification cannot be made arbitrarily. The State may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them, and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. No language is more worthy of frequent and thoughtful consideration than these words of Mr. Justice Matthews, speaking for this court in Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220: 'When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not leave room for the play and action of purely personal and arbitrary power.' The first official action of this nation declared the foundation of government in these words: 'We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain inalienable rights, that among these are life, liberty, and the pursuit of happiness.'

While such declaration of principles may not have the force of organic law, or be made the basis of judicial decision as to the limits of right and duty, and while in all cases reference must be had to the organic law of the nation for such limits, yet the latter is but the body and the letter of which the former is the thought and the spirit, and it is always safe to read the letter of the Constitution in the spirit of the Declaration of Independence. No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection. Tested by these principles, the statute in controversy cannot be sustained."

Upon the same subject the Supreme Court, in Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, said: "The difficulty is not met by saying that, generally speaking, the State, when enacting laws, may in its discretion make a classification of persons, firms, corporations, and associations in order to subserve public objects; for this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But

arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground—difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.' " To the same effect are Cotting v. Kansas City Stockyards Company, etc., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, Ballard v. Mississippi Cotton Oil Company,. 81 Miss. 507, 34 South. 533, 62 L. R. A. 407, 95 Am. St. Rep. 467, and Cooley on Constitutional Limitations (7th Ed.) pp. 560-563.

In view of the foregoing authority, the question recurs: Does the statute under discussion, as construed in this case, afford a reasonable or just classification when it establishes one rule of liability for injuries occurring .to all railroad employes, without regard to whether they are engaged in the hazard of railroad operation, leaving the liability of all other employers subject to a less stringent rule of liability? It is a matter of common knowledge that only a small per cent. of a railroad corporation's employes are engaged in its active operation. Outside of the men operating the railroad, there is a very large class of employes who are engaged in mere clerical work, and who have no more to do with the actual operation of the railroad as such than the clerks and bookkeepers of any mercantile establishment. Railroads employ many lawyers, surgeons, and clerks. Some of them keep large forces of men engaged in cutting cross-

ties in the forests, or in the breaking of stone for
ballast, and in mining coal for the use of the engines.
All are engaged in precisely similar business to that
carried forward by other employers, who are con-
fessedly not within the purview of the act. The ap-
pellee himself, at the time he was hurt, was engaged as
a carpenter in building a coal chute or tipple at the
Ingle coal mines, near or on the railroads right of
way. It does not appear whether this chute was for
the benefit of the railroad or the mining corporation;
but I shall assume, in order to eliminate any question
of fact, that the chute was being constructed for the
purpose of coaling the railroad's engines. Now, let
us suppose that the coal company had had a force of
carpenters building coal chutes by the side of those
being built by appellee, for the purpose of putting
its coal on the cars for shipment, and that a similar
accident had happened at the same time to one of its
employes. The employe of the coal mining corpora-
tion, if he had sued, would have been forced to ground
his action upon the common law prevailing in Indiana,
while, if the majority opinion be sound, appellee
could maintain his action under the statute. Assum-
ing, for the purpose of the argument, that the two
accidents were caused by identically the same mishap,
we would have different rules regulating the remedy
of the injured persons, although the occupation of
each was precisely the same. Such illustrations could
be multiplied indefinitely; but they would throw no
additional light upon the discussion. The appellee,
in building the chute by the side of the railroad, was
subject to no more hazard than would have been the
employes of the coal company, had they been engaged
in building chutes for their employer. It seems to
me utterly fallacious to say that the statute, when

made to apply to the cases of those employes who are hurt in collateral occupations, does not prescribe an arbitrary rule of liability for railroad corporations for injuries to their employes, from which other employes doing identically the same business are exempt.

The view I have expressed above is supported by very high authority. In the case of Kline v. Minnesota Iron Co., 93 Minn. 63, 66, 100 N. W. 681, the Supreme Court of Minnesota, in construing a statute of that State identical in principle with the one under discussion, said: ''This statute has been before the court in numerous cases, and we have uniformly held that it was intended by the Legislature to apply to 'railroad hazards,' and not to railroads as such; that the character of the employment was the test to be applied in determining its validity, and not the character of the employer. It was first construed in Lavallee v. St. Paul, etc., R. Co., 40 Minn. 249, 41 N. W. 974, where it was held that, if the statute be held to apply to railroad corporations as such, it would be invalid and unconstitutional as class legislation, for it is beyond the power of the Legislature to single out a particular class of employers and impose upon them a distinct rule of liability for personal injuries; but, if construed to apply to the character of the employment, the legislation was valid. It was accordingly held in that case that the Legislature intended that it should apply to the hazards and dangers peculiar to the use and operations of railroads, and the decision there made has been followed in all subsequent cases.'' In the case of Deppe v. Chicago, etc., R. Co., 36 Iowa, 52, 55: ''But if the statute be so construed as to apply to all persons in the employ of railroad corporations,

without regard to the business they were employed in, then it would be a clear case of class legislation, and would not apply upon the same terms to all in the same situation, and hence would be unconstitutional, and manifestly so. To illustrate: Suppose a railroad company employ several persons to cut the timber on its right of way, where it is about to extend its road, and the landowner employs a like number of persons to cut the timber on a strip of equal length alongside such right of way. If one of each set of employes shall be injured by the negligence of a co-employe, and the employe of the railroad company can, under the statute, maintain an action against his employer, and the other cannot, then it is clear that the law does not apply upon the same terms to all in the same situation. The law then, would not have uniform operation, but would be violative of the Constitution just as much as a law that should prescribe under the same circumstances different liabilities for merchants, for mechanics, and for laborers. The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads. When thus limited, it is constitutional; when extended further, it becomes unconstitutional. To the same effect are Jemming v. G. N. R. Co., 96 Minn. 302, 104 N. W. 1079, 1 L. R. A. (N. S.) 696; R. Co. v. Pontius, 52 Kan. 264, 34 Pac. 739; Johnson v. St. Paul & Duluth R. Co., 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; Lavallee v. St. P., M. & M. R. Co., 40 Minn. 249, 41 N. W. 974; Ballard v. Mississippi Cotton Oil Co., 81 Miss. 507, 34 South. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476.

I cannot agree to the assumption that the Supreme Court of the United States, in Tullis v. Lake Erie & Western Railroad, 175 U. S. 348, 20 Sup. Ct. 136, 44

L. Ed. 192, upheld the constitutionality of the act in question as construed in the opinion. An examination of the opinion in the case of Bedford Quarries Co. v. Bough, 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418, and the various opinions reviewed therein, will show that the Supreme Court of Indiana limited the application of the statute to the injuries of railroad employes engaged in the hazard of the active operation of the road; and it was this construction that was upheld by the Supreme Court in the case referred to above. The opinion of the Supreme Court of the United States and that of the Supreme Court of Indiana show that these courts both held that the Indiana statute, as construed by the latter court, was practically the same as the statutes of Kansas and Iowa as construed by the Supreme Court of those states. These statutes were construed without doubt to apply only to the hazard of railroading, and it was expressly said, if they had been intended to apply to all employes of railroads, they would be violative of the federal Constitution. Deppe v. Chicago, etc., R. Co., supra; Akeson v. Chicago, etc., R. Co., 106 Iowa, 54, 56, 75 N. W. 676; Railroad Co. v. Pontius, 52 Kan. 264, 34 Pac. 739; Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107.

To show that the Supreme Court of Indiana was of opinion that the statute under discussion, as construed by it and sustained by the Supreme Court of the United States, is identical with the statutes of Kansas and Iowa, as construed by the Supreme Courts of those states, I copy the following excerpt from the opinion in Bedford Quarries Co. v. Bough, supra: "The employer's liability act of Kansas was the same as the Iowa act above set out (Mo. Pac. R. Co. v. Haley, Adm'r, 25 Kan. 35, 53), and the

Supreme Court of that State, following the construction given by the Iowa Supreme Court, held in 25 Kan. 53, that it embraced only those persons exposed to the hazards of the business of railroading.' Missouri, etc., R. Co. v. Medaris, 60 Kan. 151, 154, 155, 55 Pac. 875; Mo. Pac. R. Co. v. Mackey, 33 Kan. 298, 302, 6 Pac. 291. It was held, in effect, by this court in Pittsuburg, etc., R. Co. v. Montgomery, 152 Ind. 1, 8-14, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. Rep. 30, that the employer's liability act of this State was capable of severance, by putting railroads in a class by themselves, and that such classification was proper on account of the dangerous and hazardous business of the operation of railroads, and that, so construed, said act, as applied to railroads, was not in violation of either said section 23 of article 1 of the Constitution of this State, or of the fourteenth amendment of the Constitution of the United States, even if unconstitutional as to the other employers and employes mentioned. In Tullis v. Lake Erie, etc., R. Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192, it was held that this court in the Montgomery Case treated the employer's liability act as practically the same as said statute of Iowa and Kansas, and that, so construed, it did nor arbitrarily classify railroads by name, but with regard to the business in which they were engaged, which was a proper classification, on account of the dangerous and hazardous business of operating railroads, citing Mo. Pac. R. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, and Minneapolis, etc., R. Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109, which sustained the constitutional validity of a like statute. In Pittsburg, etc., R. Co. v. Lighteiser, 168 Ind. 438, 78 N. E. 1033, 1041, 1043, this court approved the Mont-

Louisville & Nashville R. R. Co. v. Melton.

gomery Case, gave the employer's liability act, as applied to railroads, practically the same construction as had been given to the statutes of Iowa and Kansas on that subject, and held that putting railroads in a class by themselves was proper classification, on account of the dangerous and hazardous business of operating railroads, and that such classification is not based upon the difference in employers, but upon the difference in the nature of the employment."

Nor can I agree to the statement in the opinion that Melton was engaged in the hazard of the operation of the railroad because he was building a coal chute and coal is necessary to the operation of a railroad. The chute was entirely separated from the railroad's right of way, and the carpenters who were building it were in no danger from anything done in its operation. Railroads, in order to be operated, must have cross-ties and ballast, and must have clerks, bookkeepers, and auditors to keep their accounts, lawyers to defend their suits, and telegraphers to dispatch their trains; but none of the men employed in these occupations can be said to be engaged in the hazard of the operation of the railroad.

Believing that the statute under which this suit was brought violates the equality clause of the federal Constitution, and is therefore void, I cannot concur in the opinion of the court.

I am authorized to say that Judge LASSING concurs in this dissent.