## AUSTIN v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. January 12, 1915.)

### No. 4161.

MASTER AND SERVANT ☞180—ACTION FOR INJURY TO RAILROAD EMPLOYÉ—CONSTRUCTION OF STATUTE—"ENGAGED IN WORK OF OPERATING A RAILROAD."

Rev. St. Mo. 1909, § 5434, which provides that every railroad corporation owning or operating a railroad in the state shall be liable for all damages sustained by any agent or servant thereof "while engaged in the work of operating such railroad" by reason of the negligence of any other agent or servant thereof, as construed by the Supreme Court of the state, is not restricted in its application to employés engaged in the operation of trains, and an employé in a roundhouse, who was injured through the negligence of a fellow employé while engaged in gathering up and removing scrap which had accumulated in the yard, in obedience to orders of the foreman, was engaged in work necessary to the operation of the railroad, and may maintain an action under such statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. ☞180.

For other definitions, see Words and Phrases, First and Second Series, Operate.]

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by Herbert H. Austin against the Chicago, Rock Island & Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff in error, hereinafter called the plaintiff, sued the defendant railway company to recover damages for a personal injury which he alleged was caused by the negligence of a coemployé in the

service of the railway company. At the close of the plaintiff's evidence the court, upon motion of the defendant, directed a verdict and judgment in its favor, to reverse which the plaintiff prosecutes this writ of error.

E. H. Gamble, of Kansas City, Mo. (Guthrie, Gamble & Street, of Kansas City, Mo., on the brief), for the plaintiff in error.

Paul E. Walker, of Topeka, Kan., for the defendant in error.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge. At the time of his injury (May 17, 1912) the plaintiff was employed by the defendant railway company as hostler helper in its roundhouse at Eldon, a division point on its railroad in Missouri. On the day of his injury he had completed his work upon an engine, and there being nothing further to do immediately in the line of his regular employment, he and a coemployé named Beeler were directed by their foreman to help two other employés remove some scrap that had accumulated in the yard upon the railway premises, and two radiators that had been used in or near the roundhouse to a different location near the scrap bin. Following this direction he and his coemployé, Beeler, assisted two other employés in loading the scap onto a push car in use in the yards, and on top of this they placed the two radiators and pushed the car to a place near the scrap bin. The larger of the two radiators was about 16 feet long and weighed some 650 pounds. When the car reached a position near the scap bin, the plaintiff and other employés who helped handle the car lifted the larger radiator to the ground and carried it to some blocks upon which it was to be placed. There was a man at each corner of the radiator; the plaintiff and Beeler being at one end, and the other two employés at the other end. In attempting to place the radiator on the blocks, Beeler negligently and without warning, it is alleged, let go of the corner of the radiator that he was carrying, and it fell to the ground with a sudden jerk or jolt, causing a serious injury to the plaintiff's back, of which he complains, and for which he seeks recovery from the railway company. The plaintiff relies for recovery upon a statute of Missouri which reads in this way:

"Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof: Provided, that it may be shown in defense that the person injured was guilty of negligence contributing as a proximate cause to produce the injury." Revised Statutes of Missouri (1909) § 5434.

It is admitted by the defendant that plaintiff was in its employ in and about its roundhouse and yards at Eldon at the time of his injury, and was injured while assisting Beeler and other employés in carrying a radiator as alleged; but it contends that when plaintiff was injured he was not engaged in "operating a railroad," within the meaning of the Missouri statute above quoted, and was not there-

fore within its provisions, that such statute is in effect the same as the statutes of Iowa, Minnesota, and of some other states which abolish the fellow-servant rule in those states, and that the words "operating a railroad," as used in such statutes, have been construed by the courts of those states to mean only "the movement of trains, cars, or engines upon a railroad track," and that as so construed plaintiff was not when injured engaged in the work of "operating a railroad," or, if the statute be so construed as to include the plaintiff while doing the work in which he was injured, it violates the equal protection clause of the federal Constitution.

The statute of Iowa reads in this way:

"Every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employés thereof, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers or other employés, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." Code of Iowa (1897) § 2071.

This statute differs somewhat from the Missouri statute, but it is true that the Supreme Court of Iowa has construed it to mean only the movement of trains, cars, or engines upon the tracks of a railroad, and that an employé to be within its provisions must be one who is engaged in the operation of trains or cars and thus exposed to the hazards of moving trains, and in most of the cases to have been injured by such movement, and that such construction was deemed to be necessary to save the statute from violating the equality clause of the federal Constitution. But we are not now concerned immediately with the statute of Iowa or the construction placed upon it by its courts, for the Supreme Court of Missouri has construed the Missouri statute in question to be different from the Iowa statute, or the statutes of other states patterned thereafter, and such construction is controlling, unless as so construed it is repugnant to the federal Constitution. Chicago, etc., Ry. Co. v. Stahley, 62 Fed. 363, 11 C. C. A. 88.

In Callahan v. St. Louis, etc., Ry. Co., 170 Mo. 473, 71 S. W. 208, 60 L. R. A. 249, 94 Am. St. Rep. 746, one of a section crew in the employ of the railroad company was stationed upon a street below an overhead track of the railroad to remove from the street ties that might fall thereto in the course of replacement by other members of the crew above him, and to warn persons upon the street of dangers from the falling ties, was injured by a tie negligently thrown to the ground by some of the crew above him, and for which injuries he recovered judgment against the railroad company. It was contended in that case, as it is here, that the injured employé and his fellow servant were not engaged in the work of "operating a railroad" within the meaning of the Missouri statute, and that the injured employé was not, therefore, within its provisions. The court, after citing the statutes of Iowa and of some other states patterned thereafter, and the decisions of the courts construing them, said:

"It thus appears that everywhere, except in Iowa and Minnesota, the adjudications agree that it is not essential that the injury should have been inflicted by reason of the negligence of a fellow servant while actually engaged in running a car, but that the injured employé may recover if injured by the negligence of a fellow servant while they are engaged in doing any work for the railroad which was directly necessary for the operation of the railroad, and that even so sweeping a statute as that of Indiana was held by the Supreme Court of the United States not to be repugnant to or violative of the federal Constitution. * * * Under our statute to entitle the injured servant to recover it must be shown that he sustained his injuries 'while engaged in the work of operating such railroad, by reason of the negligence of any other agent or servant.' This is very different from the Iowa statute. Here the injured person must be injured 'while engaged in the work of operating such railroad'—injured not necessarily by the negligence of another employé or engineer while actually moving a train, but injured by the negligence of any other employé of the railroad. In Iowa the injury must have been inflicted by the moving of a train. In Missouri the person injured must have been actually engaged in the work of operating such railroad, not necessarily in operating the train. The two statutes, therefore, are almost the antitheses of each other, and our law cannot properly be said to have been taken from or modeled after the Iowa law." Under the Kansas statute, though that is adopted from the Iowa statute, "to entitle an injured employé to recover, it is necessary for him to show that he was injured when performing a service for the railroad that was necessary to the use and operation of the road, and it is not essential that he show that the injury was caused by a fellow servant while moving a train. Railroad Co. v. Vincent, 56 Kan. 344, 43 Pac. 251."

See, also, Union Pacific Ry. Co. v. Harris, 33 Kan. 416, 6 Pac. 571; Atchinson, etc., Ry. Co. v. Koehler, 37 Kan. 463, 15 Pac. 567, 570.

The Callahan Case was affirmed by the Supreme Court of the United States upon the authority of Tullis v. Railway Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192, and cases cited in St. Louis Merchants' Bridge Terminal Ry. Co. v. Callahan, 194 U. S. 628, 24 Sup. Ct. 857, 48 L. Ed. 1157, and approved in Louisville & Nashville Ry. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921. In the last-named case Melton recovered judgment against the railroad company in Kentucky for an injury received while employed by the railroad company in Indiana. He was one of a crew engaged in constructing a foundation for a coal tipple alongside the track, at which engines might coal, and was injured by the falling of a frame which was being raised for the purpose of placing it in its foundation. The falling of the frame was caused by the negligence of the foreman of the crew, to whose orders Melton was bound to conform, without fault on the part of Melton. The right of recovery was based upon the provisions of the statute of Indiana known as the "Employers' Liability Statute" of that state, which provides:

"That every railroad * * * operating in this state, shall be liable in damages for personal injury suffered by any employé while in its service, the employé so injured being in the exercise of due care and diligence, in the following cases:

"First. When such injury is suffered by reason of any defect in the condition of ways, works, plant, * * * and machinery connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation, or some person entrusted by it with the duty of keeping such ways, works, * * * and machinery in proper condition."

"Second. Where such injury results from the negligence of any person in

the service of such corporation, to whose order or direction the injured employé at the time of the injury was bound to conform, and did conform." Laws Ind. 1893, c. 130, § 1.

The railroad company assailed the validity of this statute upon the ground, among others, that it was in violation of the equal protection clause of the fourteenth amendment to the federal Constitution. The state court held that Melton was within its protection as construed by the Supreme Court of Indiana, and that, as so construed, it did not deny to the railroad company the equal protection of the law. In speaking of this contention, Mr. Justice White, after reviewing the authorities bearing upon this question, including the prior decisions of the Supreme Court, said:

"And coming to consider the concrete application made of these general principles in the decisions of this court which have construed the statute here in question, and statutes of the same general character enacted in states other than Indiana, we think, when rightly analyzed, it will appear that they are decisive against the contention now made. It is true that in the Tullis Case, which came here on certificate, the nature and character of the work of the railroad employé who was injured was not stated, and that reference in the course of the opinion was made to some state cases, limiting the right to classify to employés engaged in the movement of trains. But that it was not the intention of the court to thereby intimate that a classification, if not so restricted, would be repugnant to the equal protection clause of the fourteenth amendment, will be made clear by observing that the previous case of Chicago, etc., R. Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675, was cited approvingly, in which, under a statute of Kansas classifying railroad employés, recovery was allowed to a bridge carpenter employed by the railroad company, who was injured while attempting to load timber on a car. And in the opinion in the Pontius Case there was approvingly cited a decision of the Court of Appeals of the Eighth Circuit (Chicago, R. I. & P. R. Co. v. Stahley, 62 Fed. 363, 11 C. C. A. 88), wherein it was held that under the same statute an employé injured in a roundhouse while engaged in lifting a driving rod for attachment to a new engine could recover by virtue of the statute. All this is made plainer by the ruling in St. Louis Merchants' Bridge Terminal Ry. Co. v. Callahan, 194 U. S. 628, 24 Sup. Ct. 857, 48 L. Ed. 1157, where, upon the authority of the Tullis Case, the court affirmed a judgment of the Supreme Court of Missouri, which held that recovery might be had by a section hand upon a railroad who, while engaged in warning passers-by in a street beneath an overhead bridge, was struck by a tie thrown from the structure. While, as we have previously said, it is true there are state decisions dealing with statutes classifying railroad employés sustaining the restricted power to classify which is here insisted upon, we do not think it is necessary to review them or to notice those tending to the contrary. They are referred to in the opinions rendered in the court below. Nor do we think our duty in this respect is enlarged because since the judgment below was rendered the court of last resort in Indiana (Indianapolis, etc., Co. v. Kinney, 171 Ind. 612, 85 N. E. 954, 23 L. R. A. [N. S.] 711, and Cleveland, C., C. & St. L. Ry. Co. v. Foland, 174 Ind. 411, 91 N. E. 594, 92 N. E. 165, decided April 20, 1910), has, upon the theory that it was necessary to save the statute in question from being declared, repugnant to the equality clause of the state Constitution and the fourteenth amendment, unequivocally held that the statute must be construed as restricted to employés engaged in train service."

This ruling was followed in Mobile, etc., Ry. Co. v. Turnipseed, 219 U. S. 35, 39, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

In the light of these decisions it seems entirely clear that the Missouri statute is not restricted to employés engaged in the operation

of trains, and that it does not deny to the defendant the equal protection of the law because it is not so restricted.

In sustaining defendant's motion for a directed verdict and judgment, it is said in argument that the court said:

"There is nothing in this work that plaintiff was doing that had anything to do with the operation of the railroad; it did not in any sense pertain to the loading or unloading of freight, or the operation of the railroad."

But the "operation of a railroad" consists in doing many things other than the loading or unloading of freight or the movement of trains. Sectionmen engaged in keeping the track in order and free from obstructions are engaged in the operation of a railroad as much as are enginemen and trainmen, or others directly engaged in the movement of trains. In railroad yards and tracks, and about roundhouses or machine shops, it is a matter of common knowledge that there is always an accumulation of scraps, heavy objects, and other débris that, if not removed, would seriously interfere with or obstruct the operation and movement of engines and cars, or other railroad work, in such places; and employés engaged in removing such accumulations are just as much engaged in the "operation of the railroad," though in a different capacity, as are trainmen, and are alike subject to the hazards of railroad operation. The plaintiff at the time of his injury was therefore engaged in a branch of railway service necessary to the successful operation of defendant's road, and was directly within the provisions of the Missouri statute.

It is also contended by the defendant that the plaintiff's testimony fails to show any negligence upon the part of Beeler in dropping his corner of the radiator, and that the verdict was rightly directed upon this ground alone. But the testimony in regard to this was such, we think, as to require its submission to the jury; besides, it seems to be conceded that the court did not consider this question, but directed the verdict and judgment for defendant upon the ground alone that the plaintiff was not within the provisions of the Missouri statute. The judgment is reversed, and the cause remanded for a new trial.

Reversed.